# In the United States Court of Federal Claims

|   |   |
|---|---|
| RELIABILITY AND PERFORMANCE TECHNOLOGIES, LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>THE UNITED STATES,<br><br>*Defendant.* | No. 22-13<br>(Filed: November 4, 2022)<br>(Re-issued: December 15, 2022)* |

*Howard William Roth, III*, Seattle, WA, for Plaintiff.

*Elizabeth Marie Pullin*, Civil Division, United States Department of Justice, Washington, DC, for Defendant.

**OPINION**

**LERNER,** *Judge*.

    This is a case under the Contract Disputes Act ("CDA"), 41 U.S.C. § 7101, *et seq.* Plaintiff, Reliability and Performance Technologies, LLC ("Reliability" or "R&P"), brings this action against the Naval Sea Systems Command, Naval Surface Warfare Center, Carderock Division, Philadelphia ("NSWC" or the "Navy") in connection with a delivery order for an indefinite delivery, indefinite quantity ("IDIQ") contract to support U.S. Naval ship construction. Reliability seeks monetary judgment against the United States in the amount of its certified CDA claim, $1,094,060.62, plus interest, costs and fees, as well as other relief.

    Count I of the Complaint alleges that NSWC breached the duty of good faith and fair dealing by failing to conduct timely audits and timely perform the duties described in Federal Acquisition Regulation ("FAR") 42.705-1. Count II alleges that NSWC abused its discretion by denying Plaintiff payment after refusing to apply exceptions to the Limitation of Funds clause in the contract. Count III alleges that NSWC breached the contract by failing to comply with FAR 42.705-1 procedures. As a result of these actions, Reliability contends that it sustained damages in the form of indirect costs that the Government refused to pay.

---

* The Court initially filed this opinion under seal to allow the parties to propose redactions. As the parties indicated that no redactions were necessary, the Court re-issues this opinion publicly in its entirety.

The Government moves to dismiss Counts I and III of the Complaint for lack of subject matter jurisdiction. Alternatively, it moves to dismiss Count III for failure to state a claim upon which relief may be granted. The Government argues that this Court lacks jurisdiction over Counts I and III because these claims were not presented to the contracting officer ("CO") for final decision, which is a threshold requirement for this Court's jurisdiction over CDA claims. It further argues that Count III fails to state a claim because FAR 42.705-1 cannot serve as the basis for a breach of contract claim. For the reasons set forth below, the Court **DENIES** the Motion to Dismiss in its entirety.

## I.     Background

### A.     The Contract and Delivery Order

Reliability holds an IDIQ contract ("the IDIQ" or "the Contract") with NSWC. The IDIQ contracted for support services for U.S. Naval ship construction managed out of "new acquisition" program offices. Compl. ¶ 1, ECF No. 1. On May 14, 2010, NSWC awarded Reliability Delivery Order EHP1 ("the Delivery Order" or "EHP1") under the IDIQ. *Id.* ¶ 21. The Delivery Order was an incrementally funded cost plus fixed fee contract. *Id.* ¶¶ 21–22. It explained that "the Government will allot additional amounts to this contract from time to time for the incrementally funded [contract line items] by unilateral contract modification, and any such modification shall state separately the amount(s) allotted for cost, the amount(s) allotted for fee, the [contract line items] covered thereby, and the period of performance which the amount(s) are expected to cover." Def.'s App. at 19, ECF No. 12-1 (Delivery Order clause SEA 5252.232-9104(b)).

The Delivery Order incorporated by reference FAR 52.232-22, Limitation of Funds (Apr. 1984) ("LOF clause") and FAR 52.232-20, Limitation of Costs (Apr. 1984) ("LOC clause"). *Id.* at 44 (Delivery Order). In relevant part, the LOF clause provides:

> (c) The Contractor shall notify the Contracting Officer in writing whenever it has reason to believe that the costs it expects to incur under this contract in the next 60 days, when added to all costs previously incurred, will exceed 75 percent of . . . the total amount so far allotted to the contract by the Government.
>
> (d) Sixtydays [sic] before the end of the period specified in the Schedule, the Contractor shall notify the Contracting Officer in writing of the estimated amount of additional funds, if any, required to continue timely performance under the contract or for any further period specified in the Schedule or otherwise agreed upon, and when the funds will be required.

FAR 52.232-22. Similarly, the LOC clause provides:

> (b) The Contractor shall notify the Contracting Officer in writing whenever it has reason to believe that-

>    (1) The costs the Contractor expects to incur under this contract in the next 60 days, when added to all costs previously incurred, will exceed 75 percent of the estimated cost specified in the Schedule; or
>
>    (2) The total cost for the performance of this contract, exclusive of any fee, will be either greater or substantially less than had been previously estimated.
>
> (c) As part of the notification, the Contractor shall provide the Contracting Officer a revised estimate of the total cost of performing this contract.

FAR 52.232-20.

### B. Performance and Payment History Under EHP1

NSWC issued sixty-seven modifications to EHP1 between May 26, 2010, and May 12, 2015. Compl. ¶ 26. Fifty-nine of these modifications increased the incremental funds allotted to the work. *Id.* Eight of the modifications resulted in an increase to the overall contract price. *Id.* Reliability states that it "provided continual monthly notice to the Government of every time the funds expended approached 75% of the allotted funding, and how much funding would be necessary to complete performance of EHP1." *Id.* ¶ 38.

In July 2005, in connection with the original IDIQ award, the Defense Contract Audit Agency ("DCAA") conducted a pre-award survey of Reliability's accounting system and concluded that it was acceptable for contract award. *Id.* ¶¶ 17–18. However, Plaintiff alleges that according to the Defense Contract Management Agency ("DCMA"), the DCAA created an additional report in February 2007 ("2007 DCAA Report") that concluded Reliability's accounting system was deficient. *Id.* ¶ 19. Reliability alleges that DCAA, DCMA, and NSWC failed to provide a copy of the 2007 DCAA report. *Id.* ¶ 20.

When Plaintiff submitted its indirect cost proposals ("ICPs") for fiscal years ("FY") 2012–2015, the CO requested that DCAA retroactively disclaim its ability to audit Reliability's records for FY 2012 and 2013. *Id.* ¶ 66. DCAA had also rejected Reliability's initial ICP submissions for FY 2012 and 2013 as inadequate, but did not inform Reliability until 2016. *Id.* ¶ 67. Then, on June 15, 2017, DCAA issued its "2012/13 DCAA Disclaimer Report," which again stated that Reliability's accounting records were inadequate. *Id.* ¶ 68. Reliability alleges that it was not provided the 2012/13 DCAA Disclaimer Report either at the time of issuance or

anytime in 2017, as required by FAR 42.705-1(b)(iii)(A). *Id.* ¶ 71. It did not receive a copy until September 2018. *Id.* ¶ 77.[1]

Reliability also alleges that it never had the opportunity to address with the DCAA auditor the issue of the purported inadequacies described in the 2012/13 DCAA Disclaimer Report. *Id.* ¶¶ 73–74. It further alleges that the issue was not elevated to the CO as FAR 42.705-1(b)(iii)(B) required. *Id.* ¶¶ 72–74. In 2018, Reliability requested a DCAA audit of its 2012–2013 ICPs based on these issues, but the CO stopped answering emails and responding to Reliability. *Id.* ¶ 78. Following multiple CO turnovers, it was not until 2019 that a CO entered negotiations with Reliability to resolve its indirect rates for 2012–2013. *Id.* ¶ 79. However, "[b]y that time DCMA was already in the process of de-obligating funds to R&P's contracts, including EHP1, over R&P's objection." *Id.* ¶ 80.

In July 2020, DCAA issued a finding that Reliability incurred over $1 Million in allowable indirect costs that NSWC had not yet paid. *Id.* ¶ 81. But in refusing to make the payment to Reliability, NSWC cited the cost overrun notice requirement in the LOF clause. *Id.* ¶ 82. There was also no longer enough money obligated to EHP1 at that time to pay Reliability. *Id.* Reliability alleges that the "Government's failure to conduct timely audits contributed substantially to R&P's inability to determine its actual overhead expenses, and therefore R&P may be relieved from the contract's overrun reporting requirements." *Id.* ¶ 87; *see also id.* at ¶ 88. It also claims that any required notice of cost overruns should be excused due to the Government's fault and failure to properly administer the contract. *Id.* ¶ 92. In the Complaint, Reliability cites to several periods of performance for which it alleges unpaid variances between what the government had already paid and what was due under the final negotiated rates. *Id.* ¶¶ 31–36, 124–30. The contested total is $1,094,060.62. *Id.*

        C.     **Certified CDA Claim and Complaint in This Court**

On March 15, 2021, following an unsuccessful request for an equitable adjustment, Reliability submitted a certified CDA claim demanding payment of indirect costs of $1,094,060.62 incurred under EHP1 (plus interest from the date of receipt of the claim). *Id.* ¶ 8; Def.'s App. at 57–105 (CDA Claim). On May 14, 2021, the CO denied Reliability's certified claim on the grounds that Reliability failed to comply with the LOF clause's cost overrun reporting requirements. Compl. ¶ 13; Def.'s App. at 106–10.

On January 5, 2022, Plaintiff filed its Complaint in this Court. Compl. On May 27, 2022, the Government filed a partial Motion to Dismiss. Def.'s Mot. to Dismiss ("Def.'s Mot."),

---

[1] Under FAR 52.216-7, ICPs must be submitted by contractors with cost-reimbursement contracts within six months of the end of each fiscal year. ICPs are based on the actual indirect costs which the contractor incurred during that fiscal year. DCAA then reviews the ICPs and shares the results of its audit and any recommendations with the CO. The CO independently determines whether to accept the ICP and may negotiate with the contractor on any questionable costs. Once ICPs are agreed upon, the contractor updates its prior billing to reflect the final indirect cost rates. *See, e.g.*, *Appeal of Tech Sys., Inc.*, ASBCA No. 59577, 17-1 B.C.A. (CCH) ¶ 36631 (Jan. 12, 2017) (describing the ICP process under FAR 52.216-7).

ECF No. 12.  Reliability alleges in its Response to the Government's motion that "the facts of the 20-page R&P Complaint are taken almost word for word from parts of the operative facts detailed [in the] 49-page R&P CDA claim."  Pl.'s Resp. to Def.'s Mot. ("Pl.'s Resp.") at 4, ECF No. 13.  Plaintiff details in its response which parts of the Complaint are directly lifted from, or "dovetail" with the CDA claim.  *Id.* at 4–6.

## II. Discussion

### A. Legal Standards

#### 1. Motions to Dismiss Pursuant to Rule 12(b)(1)

The Government first moves to dismiss under United States Court of Federal Claims Rule ("RCFC") 12(b)(1) for lack of subject matter jurisdiction.  The Tucker Act grants the Court of Federal Claims jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1).  The Act specifically grants this Court "jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under" the CDA.  28 U.S.C. § 1491(a)(2); *see also* 41 U.S.C. § 7102(a).  For this Court to exercise jurisdiction, the CDA requires that "[e]ach claim by a contractor against the Federal Government relating to a contract . . . be submitted to the contracting officer for a decision."  41 U.S.C. § 7103(a); *see also M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010) ("[J]urisdiction . . . requires both a valid claim and a contracting officer's final decision on that claim.") (citation omitted).

The Federal Circuit interprets this threshold requirement to mean that the contractor must first present its claim to the CO, and the CO must then render a final decision on the claim.  *See England v. Swanson Grp., Inc.*, 353 F.3d 1375, 1379 (Fed. Cir. 2004).  A claim need not use particular language to satisfy the CDA's requirements, but a "contractor [must] submit in writing to the contracting officer a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim."  *Cont. Cleaning Maint., Inc. v. United States*, 811 F.2d 586, 592 (Fed. Cir. 1987); *see also K-Con Bldg. Sys., Inc. v. United States*, 778 F.3d 1000, 1005 (Fed. Cir. 2015); *Sarro & Assocs., Inc. v. United States*, 152 Fed. Cl. 44, 49, 52 (2021).  "This approach, which has been applied in a practical way, serves the objective of giving the contracting officer an ample pre-suit opportunity to rule on a request, knowing at least the relief sought and what substantive issues are raised by the request."  *K-Con*, 778 F.3d at 1006.

To establish CDA jurisdiction, a plaintiff must assert in its complaint "the same claim previously presented to and denied by the contracting officer."  *Scott Timber Co. v. United States*, 333 F.3d 1358, 1365 (Fed. Cir. 2003) (citing *Cerberonics, Inc. v. United States*, 13 Cl. Ct. 415, 417 (1987)).  "This standard, however, does not require [rigid] adherence to the exact language or structure of the original administrative CDA claim."  *Id.* at 1365–66.  The allegations in the complaint must only "arise from the same operative facts, claim essentially the same relief, and merely assert differing legal theories for that recovery."  *Id.* at 1366 (finding the

court had jurisdiction though the legal theories were "slightly different"); *Sarro*, 152 Fed. Cl. at 52. However, a complaint that presents a "materially different factual or legal theory . . . does create a different claim." *Just in Time Staffing v. United States*, 143 Fed. Cl. 405, 411 (2019) (quoting *K-Con*, 778 F.3d at 1006); *see Lee's Ford Dock, Inc. v. Sec'y of the Army*, 865 F.3d 1361, 1369 (Fed. Cir. 2017); *K-Con*, 778 F.3d at 1005 (a claim must "adequately specify both the amount sought and the basis for the request," and therefore, requests should be treated as "involving separate claims if they *either* request different remedies (whether monetary or non-monetary) or assert grounds that are materially different from each other factually or legally"); *see also Sarro*, 152 Fed. Cl. at 52.

To determine whether a complaint and CDA claim arise from the same operative facts, the Court compares the elements that a plaintiff would need to show to be successful on each claim. *See Tolliver Grp., Inc. v. United States*, 20 F.4th 771, 777 (Fed. Cir. 2021); *see also Monterey Consultants, Inc. v. United States*, 159 Fed. Cl. 641, 650–51 (2022). "If the court will have to review the same or related evidence to make its decision, then only one claim exists. . . . On the other hand, if the claims as presented to the CO will necessitate a focus on a different or unrelated set of operative facts as to each claim, then separate claims exist." *Placeway Constr. Corp. v. United States*, 920 F.2d 903, 907 (Fed. Cir. 1990). Overall, "the claim before the court [in the complaint] cannot be said to arise from the same operative facts [in the CDA claim] unless it is clear that the claim presented to the contracting officer was specific enough to give the officer notice of the basis of the claim and allow him to make an informed judgment about it." *Affiliated Constr. Grp., Inc. v. United States*, 115 Fed. Cl. 607, 612 (2014).

### 2.      Motions to Dismiss Pursuant to Rule 12(b)(6)

A motion to dismiss under RCFC 12(b)(6) for failure to state a claim addresses the Court's ability "to exercise its general power with regard to the facts peculiar to the specific claim." *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999). Denial of a Rule 12(b)(6) motion to dismiss is warranted when the complaint presents "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Granting a Rule 12(b)(6) motion to dismiss "is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). A court considering a motion to dismiss must accept all well-pled facts as true and draw all reasonable inferences in the plaintiff's favor. *See, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) (collecting cases); *Pixton v. B & B Plastics, Inc.*, 291 F.3d 1324, 1326 (Fed. Cir. 2002). Importantly, under this standard, a plaintiff is not required to conclusively prove that it is entitled to a legal remedy. Rather, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

### B.      Analysis

The Government moves to dismiss Counts I and III of the Complaint for lack of subject matter jurisdiction on the grounds that they were not presented to the CO for a final decision. Def.'s Mot. at 1. Its central argument is that the legal theories in Counts I and III are materially

different from the CDA claim because they assign culpability to the Government rather than to Reliability. *Id.* at 8–9. It contends that Reliability admitted fault in its CDA claim by seeking to be excused from its failure to comply with the cost overrun reporting requirements. *Id.* In contrast, the Government asserts that the Complaint assigns culpability to NSWC by arguing that its acts and omissions led to Reliability's non-compliance, breaching the duty of good faith and fair dealing and the Contract. *Id.* at 9–10. According to the Government, these are materially different legal theories.

The Government argues in the alternative that the Court should dismiss Count III for failure to state a claim upon which relief may be granted because NSWC's non-compliance with FAR 42.705-1 procedures cannot serve as the basis for a breach of contract claim. *Id.* at 1, 10. It advances this argument because FAR 42.705-1 is not a clause in the contract. *Id.* at 10. FAR 52.216-7(d)(1), Allowable Cost and Payment (Dec. 2002), which is a clause in the contract, requires final annual indirect cost rates to be established in accordance with FAR subpart 42.7. However, the Government supplies its own interpretation of FAR 52.216-7. *Id.* at 11. It attempts to establish that language in paragraph (d)(3) of that clause indicates that nothing in FAR 52.216-7—even the Government's failure to follow FAR subpart 42.7 procedures—can trump Reliability's overrun reporting obligations. *Id.*

As explained below, the Court disagrees with the Government on all fronts.

### 1.     The Court Has Jurisdiction Over Count I.

Count I of the Complaint is not materially different from the CDA claim. It makes two allegations. First, that the Government did not properly administer EHP1, and second, that the Government breached the implied duty of good faith and fair dealing by failing to conduct timely audits and comply with the procedures set forth in FAR 42.705-1. Compl. ¶¶ 147–54. The CDA claim asserted that it would be inequitable for the Government to deny payment based on Reliability's non-compliance with cost overrun reporting requirements. Def.'s App. at 93–94 (CDA Claim). Reliability faulted the Government's alleged failure to conduct timely audits and follow FAR 42.705-1 procedures as the cause of the non-compliance. *Id.* Both Count I and the CDA claim rely on the same operative facts. As such, the CO had sufficient notice of a potential claim based on the Government's alleged failure to conduct timely audits and follow FAR 42.705-1 procedures.

Indeed, the parties do not dispute that the CDA claim and Count I present nearly identical factual allegations. The facts in the Complaint are either taken verbatim from the CDA claim, or clearly describe facts presented in the CDA claim. Pl.'s Resp. at 4. *Compare* Compl. *with* Def.'s App. at 57–105 (CDA Claim). The CDA claim and Complaint also seek the same relief: recovery of unpaid indirect cost variances totaling $1,094,060.62. Compl. ¶ 154; Def.'s App. at 57 (CDA Claim). Because the Complaint contains the same factual predicate and relief as the CDA claim, the Court's task is to determine whether Count I presents a materially different legal theory. *See Scott Timber Co.*, 333 F.3d at 1365–66 (establishing jurisdiction where the CDA claim and complaint arose from the same operative facts and claimed the same relief, but merely asserted "slightly different" legal theories).

To evaluate whether Reliability's Complaint relies on a materially different legal theory from its CDA claim, this Court will compare the facts required to meet each claim's elements. *See, e.g.*, *Tolliver*, 20 F.4th at 777. To prove its CDA claim, Reliability needed to show that the circumstances surrounding its failure to comply with the cost overrun reporting requirements made it inequitable for the Navy to deny payment based on this non-compliance. *See Gen. Elec. Co. v. United States*, 440 F.2d 420, 423 (Ct. Cl. 1971) ("[I]n some circumstances where advance authorization is not given it would be inequitable for the Government to refuse additional funding."); *see also* Def.'s App. at 90 (CDA Claim) (citing *General Electric* as binding authority for this proposition). One circumstance where a contractor may be relieved from overrun reporting requirements is "[w]hen the Government's failure to conduct timely audits contributes substantially to a contractor's inability to determine its actual overhead expenses." *Dames & Moore*, 93–1 BCA (CCH) ¶ 25,487 at 126,976 (Oct. 7, 1992); *see also Scherr & McDermott, Inc. v. United States*, 360 F.2d 966, 969 (Ct. Cl. 1966).

Reliability recites lengthy facts in its CDA claim to demonstrate that the Government substantially hindered Reliability's ability to determine its expenses. Def.'s App. at 32–37, 40–41, 46–47 (CDA Claim). It cites the Government's failure to timely conduct audits, adhere to FAR 42.705-1 procedures, and communicate transparently. *Id.* The CDA claim highlights DCAA, DCMA, and NSWC's failure to properly follow the procedures outlined in FAR 42.705-1 in various ways. It focuses in particular on the Government's failure to negotiate final indirect costs until six years after the end of contract performance, when available funds had already been expended. *Id.* Reliability also underscores that the Government refused to communicate in response to its many requests for guidance. *Id.* In sum, Reliability argues its inability to provide notice of cost overruns under the LOC and LOF clauses resulted from the above Government actions. This led the CO to deny Reliability payment of its cost variances in violation of principles of equity. *Id.*

The Complaint makes clear that these very same Government acts and omissions are the basis for Count I. Specifically, Reliability argues that these Government failures effectively interfered with its performance of the cost overrun reporting requirements. Compl. ¶¶ 147–54. As the United States Court of Appeals for the Federal Circuit explains:

> [T]he covenant of good faith and fair dealing "imposes obligations on both contracting parties that include the duty not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party." . . . Both the "duty not to hinder and the duty to cooperate are aspects of the implied duty of good faith and fair dealing."

*Solaria Corp. v. United States*, 123 Fed. Cl. 105, 119–20 (2015) (first quoting *Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005), and then quoting *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 820 n.1 (Fed. Cir. 2010)). "What is promised or disclaimed in a contract helps define what constitutes 'lack of diligence and interference with or failure to cooperate in the other party's performance.'" *Id.* (quoting *Metcalf Constr. Co. v. United States*, 742 F.3d 984, 991 (Fed. Cir. 2014)). In essence, "[t]he implied duty of good faith and fair dealing is limited by the original bargain: it prevents a party's acts or omissions that, though not

proscribed by the contract expressly, are inconsistent with the contract's purpose and deprive the other party of the contemplated value." *Metcalf*, 742 F.3d at 991 (citation omitted).

The LOC and LOF clauses obligated Reliability to notify the CO "whenever it has reason to believe that the costs it expects to incur under this contract in the next 60 days, when added to all costs previously incurred, will exceed 75 percent of" either the amount of funds allotted to the contract (in the case of the LOF clause) or the estimated cost specified in the delivery schedule (in the case of the LOC clause). FAR 52.232-22; FAR 52.232-20. Thus, to succeed on Count I, Reliability must show that the Government's acts or omissions constituted interference or failure to cooperate with Reliability's reporting requirements in contravention of the reporting requirements' purpose.

In this effort, Reliability cites the Government's alleged failure to properly follow the procedures outlined in FAR 42.705-1. *See* Compl. ¶¶ 86–87. That failure allegedly prevented the negotiation of indirect rates until several years after contract performance was complete and available funds were already expended. *Id.* The Complaint also points to the Government's lack of response to its requests for guidance. *Id.* ¶ 78. Consequently, Reliability was not able to provide notice of cost overruns. *Id.* ¶¶ 151–53. These operative facts are identical to those used in Plaintiff's CDA claim arguing that application of the cost overrun reporting requirements would be inequitable in these circumstances. Def.'s App. at 32–37, 40–41, 46–47 (CDA Claim).

Notably, the Complaint's structure and wording also mirror the CDA claim. The titles of Complaint Section C (Titled: "R&P Is Entitled To Payment Of the $1,094,060.62 Variance Between What the Government Has Already Paid and What Is Due Under the Final Negotiated Rates") and its three subsections are taken nearly word for word from Reliability's CDA claim analysis. *Compare* Compl. at 6, 8, 10, 19 ("1. The Government Was Not Prejudiced by any Lack of Notice of the Potential Overrun"; "2. Any Notice Requirement is Excused Because of Government Fault and it Would be Inequitable for the Government to Refuse Additional Funding"; and "3. R&P Could Not Have Reasonably Foreseen the Cost Overrun During the Time of Performance of EHP1."), *with* Def.'s App. at 82, 88, 90, 98 (CDA Claim) ("1. The Government Was Not Prejudiced by the Alleged Lack of Notice of the Potential Overrun"; "2. Under the Circumstances Here, it Would be Inequitable for the Government to Refuse Additional Funding"; and "3. R&P Could Not Have Reasonably Foreseen the Cost Overrun During the Time of Performance of EHP1"). Each count of the Complaint then reincorporates and realleges the contents of these sections.

Regardless of whether its claims sound in equity or contract, Plaintiff has adhered to a consistent narrative throughout administrative and court proceedings: NSWC failed to properly administer the contract with respect to the requirements in FAR 52.232-20, 52.232-22, and 52.216-7. *See Planate Mgmt. Grp., LLC v. United States*, 139 Fed. Cl. 61, 72 (2018) ("Although plaintiff did not specifically articulate a breach of the covenant of good faith and fair dealing in its certified claim, the factual recitations therein described the [agency's] alleged failure to engage in reasonable contract administration."). At each stage, Reliability has painted the process of determining indirect cost rates as fraught with irresponsible decision making, unfairness, and lack of communication from the agency. The CDA claim provided the CO ample notice of the potential legal theories rooted in this narrative, including breach of the

implied covenant of good faith and fair dealing. Therefore, the claim in Count I was presented to the CO for a final decision, and this Court may exercise jurisdiction over it.

### 2. The Court Has Jurisdiction Over Count III and Count III States a Claim Upon Which Relief May Be Granted.

Count III alleges that NSWC breached the Contract by neglecting to establish final indirect cost rates in accordance with FAR 42.705-1. Whether this failure can constitute a breach of contract in the first place is dispositive as to both the 12(b)(1) and 12(b)(6) issues. As established above, the CDA claim sufficiently notified the CO of claims based on the Government's failure to follow FAR 42.705-1 procedures. Count III cites the same operative facts as the CDA claim to argue that the Government breached the Contract through these acts and omissions. Compl. ¶¶ 166–67. Therefore, if the failure to follow FAR 42.705-1 procedures can give rise to a breach, Count III alleges sufficient factual matter to state a claim and jurisdiction is proper because the CO had sufficient notice of the claim. If it cannot support a breach claim, then Count III necessarily fails to state a claim and was not presented to the CO for final decision, as the CO could not have had notice of a non-existent cause of action.

This Court finds that non-compliance with FAR 42.705-1 procedures can indeed breach the Contract—specifically, the clause at FAR 52.216-7. Therefore, it will not dismiss Count III for lack of subject matter jurisdiction or failure to state a claim.

The Government correctly notes that FAR 42.705-1 is not a clause in the contract.[2] Def.'s Mot. at 10. However, the Contract clause at FAR 52.216-7(d)(1) requires the parties to establish final indirect cost rates in accordance with FAR subpart 42.7. The Government argues that other language in FAR 52.216-7—in paragraph (d)(3)—"makes clear" that this clause cannot support a breach of contract claim for failure to follow FAR 42.705-1 procedures. *Id.* at 11. This Court disagrees. FAR 52.216-7(d)(1) unequivocally requires compliance with FAR subpart 42.7, including the procedures at FAR 42.705-1. Thus, failure to follow these prescribed procedures breaches the Contract.

The Government incorrectly interprets the relationship between FAR 52.216-7 paragraphs (d)(1) and (3). Those paragraphs provide:

> (d)(1) Final indirect cost rates and the appropriate bases shall be established in accordance with subpart 42.7
>
> . . .
>
> (d)(3) The Contractor and the appropriate Government representative shall execute a written understanding setting forth the final indirect cost rates. . . . ***The understanding shall not change any monetary ceiling, contract obligation, or specific cost allowance or disallowance provided for in this contract.*** The understanding is incorporated into this contract upon execution.

---

[2] The FAR's contract clauses are exclusively located at Part 52.

FAR 52.216-7(d) (emphasis added).  The Government asserts that the bolded language "makes clear that final agreement between the parties on indirect rates has no effect on the funding ceiling or contract obligations" and "[t]herefore, by the order's explicit terms, FAR 42.705-1 does not trump the requirement that Reliability provide written notice of its cost overruns."  Def.'s Mot. at 11.  It goes on to state "[i]ndeed, FAR 52.216-7(d)(3) makes clear that nothing within FAR 42.705-1 could change the notification requirement to which the parties had agreed."  *Id.*

However, FAR 52.216-7 is straightforward about the meaning of the bolded language.  The requirement to establish indirect cost rates pursuant to FAR subpart 42.7 is a related, but undeniably separate, contract requirement from executing a written understanding setting forth final indirect rates.  In the bolded statement, the phrase "shall not change any monetary ceiling, contract obligation, or specific cost allowance or disallowance" unambiguously modifies "[t]he [written] understanding," not paragraph (d)(1)'s separate requirement to follow FAR subpart 42.7 procedures.  FAR 52.216-7(d).

Moreover, in stating that "FAR 52.216-7(d)(3) makes clear that nothing within FAR 42.705-1 could change the notification requirement," the Government mischaracterizes Plaintiff's argument.  Def.'s Mot. at 11.  The Complaint asserts that the Government's failure to follow the procedures in FAR 42.705-1 made it impossible for Reliability to calculate its cost overruns.  Reliability did not ask the CO or this Court to apply FAR 42.705-1 to modify the reporting requirements, but rather, to apply common law exceptions to the reporting requirements.

Finally, the Court of Federal Claims has previously found a breach of contract where the Government failed to follow procedures cross-referenced in FAR 52.216-7.  The court in *General Dynamics Corp. v. United States* held that the Government breached the contract by refusing to follow FAR subpart 31.2 procedures as prescribed by FAR 52.216-7(a).  47 Fed. Cl. 514, 545–48 (2000).  *General Dynamics* suggests that failure to follow cross-referenced procedures where mandated by a contract clause can give rise to breach.  *Id.*  *Compare* FAR 52.216-7(a) ("The Government will make payments to the Contractor . . . in amounts determined to be allowable by the Contracting Officer in accordance with . . . subpart 31.2."), *with* FAR 52.216-7(d)(1) ("Final annual indirect cost rates and the appropriate bases shall be established in accordance with subpart 42.7.").  The Complaint sufficiently alleges that the Government breached the contract by failing to follow FAR subpart 42.7 procedures.  The CDA claim similarly challenged this failure.  Therefore, Count III of the Complaint states a claim upon which relief may be granted and presents the "same claim" as the CDA claim.

### III.     Conclusion

Plaintiff satisfied its threshold burden to obtain a CO's final decision on Counts I and III of the Complaint.  Furthermore, it states a claim for breach of contract based on the Government's alleged failure to follow FAR 42.705-1 procedures as prescribed by FAR 52.216-7(d)(1).  Accordingly, the Government's Motion to Dismiss is **DENIED**.

**IT IS SO ORDERED.**

                                             <u>s/ Carolyn N. Lerner</u>
                                             CAROLYN N. LERNER
                                             Judge